# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Raciel Zaldivar-Proenza,                          Case No. 21-CV-1231 (KMM/JFD)

              Petitioner,

v.                                                **REPORT AND**
                                                  **RECOMMENDATION**
William Bolin, Warden,

              Respondent.

This case comes before the Court on Petitioner Raciel Zaldivar-Proenza's application for habeas corpus relief under Title 28 U.S.C. § 2254. (Pet. at 1, Dkt. No. 1.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to Title 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. A Minnesota state district court convicted Petitioner of both fourth- and fifth-degree criminal sexual conduct in violation of Minnesota Statute §§ 609.345.1(d) and 609.3451.1.[1] (Resp't's Ex. 13 at 1–2, Dkt. No. 8-3.) The district court sentenced Petitioner to 78 months in prison, to be followed by lifetime conditional release, which Mr. Zaldivar-Proenza is currently serving at the Minnesota Correctional Facility - Moose Lake in Moose Lake, Minnesota. (Pet. at 1.) Petitioner argues that the state district court violated his Sixth Amendment right to counsel when, in the absence of defense counsel, it granted the State's

---

[1] Minnesota also initially charged Petitioner with first-degree burglary in violation of Minnesota Statute § 609.582.1(a), but the State later dismissed that charge. (Resp't's Answer at 2 n.2.)

discovery motion to photograph Petitioner's body because there were scratches on it that the assault victim could have inflicted. (*Id.* at 2–4.) Where a conviction is obtained through a violation of a defendant's constitutional rights (here, the Sixth Amendment right to the assistance of counsel), a prisoner's conviction must be overturned. *See, e.g., Maine v. Moulton*, 474 U.S. 159, 172 (1985). Petitioner names William Bolin, the Warden of Minnesota Correctional Facility - Oak Park Heights in Oak Park, Minnesota, as Respondent in this Habeas Petition because Warden Bolin was the designated person who had state custody of Petitioner at the time that Mr. Zaldivar-Proenza filed this Petition. (Pet. at 1.) Respondent Bolin argues that the Court should deny Mr. Zaldivar-Proenza's Petition because the Minnesota Supreme Court's decision affirming Petitioner's conviction was neither contrary to, nor an unreasonable application of, clearly established federal law. (Resp't's Answer at 1–2, Dkt. No. 7.) For the reasons set forth below, the Court recommends that Mr. Zaldivar-Proenza's Habeas Petition be denied and dismissed with prejudice.

## I.    BACKGROUND

### A.    The State Court Proceedings

A Minnesota jury convicted Petitioner of both fourth- and fifth-degree criminal sexual conduct for pulling down a woman's pants and underwear while she slept and touching her bare buttocks with his hand while moving it towards her vagina. (Pet'r's Ex. 11 at 1, Dkt. No. 13-3.) The jury found that the assault awakened the victim, who then pushed the Petitioner away and scratched his arm. (*Id.*) Shortly before Petitioner's initial appearance, the State moved the state district court to permit it to capture these scratches

through an examination and photographs, claiming that the transitory nature of the scratches required their prompt preservation as potential evidence for trial. (*Id.* at 2.) The State filed this motion pursuant to Minnesota Rule of Criminal Procedure 9.02, subdivision 2(1)(h), which allows courts to grant a prosecutor's discovery motion if it will materially aid in determining whether the defendant committed the charged offense. (*Id.* at 3.) The district court granted the State's discovery motion to photograph Petitioner's arm for scratch marks. (*Id.* at 2.)

Petitioner arrived at his initial appearance without counsel,[2] but the district court determined that Petitioner qualified for a public defender and stated that "an attorney will appear with [Petitioner] at [his] next appearance." (Pet'r's Ex. B at 6.) The district court asked about the State's Rule 9.02 discovery motion and stated, "I'd like to preserve [Petitioner's] right to legal counsel to address that[,] but . . . are we looking at something that needs to be done rapidly?" (*Id.* at 7.) The State responded that it was "not sure how long those—a scratch would appear on a body" and that "the offense did occur two days ago." (*Id*. at 7–8.) The district court then granted the discovery motion to examine and photograph Petitioner's body for scratch marks. (*Id.* at 8.) After the court granted the discovery motion, Petitioner claimed that he had worked the prior weekend and that "[t]here was a fence right there when I was working, and I got some little marks on me from that fence." (*Id.*) The district judge cautioned Petitioner not to go in further detail about this during the initial appearance in order to preserve his right against self-

---

[2] Petitioner is a Spanish speaker, so an interpreter assisted him at the initial appearance. (Pet'r's Ex. B at 4, Dkt. No. 1-1.)

incrimination, and advised him that his attorney would be present at his next hearing. (*Id.* at 9.) Pursuant to the district court's order, a sheriff's deputy took photographs of Petitioner's left arm after the initial appearance. (Resp't's Ex. 3 at 15, Dkt. No. 8-3.)

After the deputy took the photographs, Petitioner filed a motion to suppress the photographic evidence, arguing that the State did not give him a fair opportunity to respond or object to the State's motion.[3] (Resp't's Ex. 14 at 2, Dkt. No. 8-14; Resp't's Ex. 15, Dkt. No. 8-15.) The district court, however, denied Petitioner's motion to suppress because "the Rule 5 [initial appearance] hearing was in place to appoint counsel and fix bail[,]" so his right to counsel was not violated. (Resp't's Ex. 15 at 4 (citing *State ex. rel. Ahlstrand v. Tahash*, 123 N.W.2d 325, 326 (1963) (holding the defendant did not have the right to counsel when the hearing is solely to set bail and appoint counsel)).) As noted above, a jury eventually convicted Petitioner, and the district court sentenced him to serve time in prison. (Pet'r's Ex. 11 at 2.)

On appeal to the state's higher courts, Petitioner argued that his initial appearance was a "critical stage" because it was a "trial-like confrontation" requiring defense counsel, and therefore, that the district court violated his Sixth Amendment right to counsel by granting the State's discovery motion at the initial appearance without Petitioner's counsel being present. (Pet. at 2; Pet'r's Ex. 7 at 1, Dkt. No. 13-1.) The Minnesota Court of Appeals, in an unpublished opinion, held that "the discovery hearing on an otherwise-valid request

---

[3] Petitioner did not raise this argument on appeal, so the state appellate courts did not decide the issue, and it is not before this Court in Mr. Zaldivar-Proenza's Habeas Petition. (*See* Pet'r's Ex. 11 at 10 n.1.)

to noninvasively photograph scratches was not a critical stage of the proceedings." *State v. Zaldivar-Proenza*, No. A19-0157, 2020 WL 290442, at *3 (Minn. Ct. App. Jan. 21, 2020), *rev. granted* (Apr. 14, 2020), *aff'd*, 957 N.W.2d 93 (Minn. 2021). (*See also* Resp't's Ex. 10 at 3, Dkt. No. 8-10.) The Minnesota Supreme Court subsequently affirmed Petitioner's conviction. *See State v. Zaldivar-Proenza*, 957 N.W.2d 93, 100 (Minn. 2021). (*See also* Pet'r's Ex. 11 at 5.) The Minnesota Supreme Court held that his "first appearance seeking photographic transitory scratches on [Petitioner's] arms was not a critical stage."[4] *Zaldivar-Proenza*, 957 N.W.2d at 100.

### B.    Federal Habeas Corpus Proceedings

On May 5, 2021, Petitioner timely filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (*See* Pet.[5]) This Habeas Petition raises one ground for relief: Petitioner argues the state district court violated his Sixth Amendment right to counsel at his initial appearance by granting the State's discovery motion to photograph his body in the absence of his appointed counsel. (*Id.* at 4; *see also* Pet'r's Mem. Supp. at 2, Dkt. No. 3.) Petitioner claims that the Sixth Amendment affords him the right to the assistance of counsel in all criminal prosecutions. (Pet'r's Mem. Supp. at 3 (citing *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963)).) Mr. Zaldivar-Proenza's Petition meticulously lays out the events that occurred during his initial appearance in state court,

---

[4] Justice Hudson and Chief Justice Gildea dissented and would have held that a hearing on a prosecutor's discovery motion under Rule 9.02, subdivision 2, is a critical stage, and, thus, that the district court violated Petitioner's Sixth Amendment right to counsel. (Pet'r's Ex. 11 at 5.)

[5] In addition to his Petition, Mr. Zaldivar-Proenza has also sent the Court several letters urging it to grant his Petition. (*See* Pet'r's Letters, Dkt. Nos. 13–14.)

and within the subsequent opinions of the higher reviewing courts, and argues that these events demonstrate that the state courts denied him the assistance of counsel during his initial appearance and that, consequently, he was unlawfully convicted and sentenced, and is presently unlawfully detained. (*Id.* at 2–8.) He points out that two justices of the Minnesota Supreme Court clearly agreed because they dissented from that court's decision to affirm his conviction. (*Id.* at 10.) As relief, Petitioner requests that this Court vacate the state court's judgment and sentence. (*Id.*)

In response to the Petition, Respondent argues that Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1) because the Minnesota Supreme Court's decision was not "contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." (Resp't's Answer at 1, 6.) Respondent further claims that the U.S. Supreme Court has never held that the discovery motion at issue in this action is a "critical stage," and, consequently, that the Minnesota Supreme Court reasonably applied existing U.S. Supreme Court precedent to Petitioner's case. (*Id.* at 1–2.)

## II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas petitions filed by state prisoners. *See* 28 U.S.C. § 2254. The AEDPA states that federal courts shall entertain a habeas corpus petition on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To evaluate such petitions, the AEDPA provides, in relevant part, that:

     (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas petitions are reviewed under a highly deferential standard; pursuant to 28 U.S.C. § 2254(d), petitioners may only obtain relief where they successfully demonstrate that the state court's decision was *unreasonable*. To do this, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Thus, the question before this Court is whether fair-minded jurists would agree that the state court decision misapplied or contradicted federal law, or that its decision could not have been reasonably reached based on the facts before it. *See* 28 U.S.C. § 2254(d).

## III.  DISCUSSION

Before turning to the merits of Mr. Zaldivar-Proenza's Habeas Petition, the Court will consider two initial matters—exhaustion of claims in the state courts, and fair presentation of the federal questions involved in this action before the state courts.

A.     **Exhaustion of Claims Before the State Courts**

As a threshold matter, this Court must determine if Petitioner has exhausted his claims before the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). Federal courts cannot grant a writ of habeas corpus to a state prisoner unless the prisoner first exhausts all available state court remedies for their claims. *See id.* "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To properly exhaust their claim, a federal habeas petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking relief in federal court. *Id.* at 845. In Minnesota, a petitioner's claims must be presented to both the Minnesota Court of Appeals and the Minnesota Supreme Court before a federal court may entertain them. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[A] prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review) . . .").

Here, Petitioner was convicted in, and sentenced by, the state district court, and both the Minnesota Court of Appeals and the Minnesota Supreme Court affirmed his conviction. *See Zaldivar-Proenza*, 2020 WL 290442, at *3 (the Minnesota Court of Appeals decision); *Zaldivar-Proenza*, 957 N.W.2d 93 at 100 (the Minnesota Supreme Court decision). This satisfies the state court exhaustion requirement.

8

### B.    Fair Presentation of the Federal Questions Involved in the Claims Raised Before the State Courts

Next, the Court considers whether Petitioner fairly presented the federal questions involved in his claims to the state courts. Federal courts may not entertain a habeas petition unless the petitioner fairly presented the federal dimension of their claims to the state courts. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). "A state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, but he does have to give the state courts fair notice that there is indeed a federal constitutional dimension to his claims." *Carney v. Fabian*, No. 05-CV-538 (RHK/JSM), 441 F. Supp. 2d 1014, 1022 (D. Minn. 2006), *aff'd*, 487 F.3d 1094 (8th Cir. 2007). To fairly present a federal claim in state court, a petitioner must have pointed the state courts "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999), *cert. denied*, 528 U.S. 846 (1999)).

Here, the Court finds that Petitioner fairly presented a federal claim before the state courts. Petitioner's brief to the Minnesota Supreme Court argued that "the federal constitution . . . guarantees[s] a defendant's right to counsel[,]" and therefore, "[Petitioner's] right to counsel had attached at the time of the joint hearing and the hearing

9

amounted to a critical stage . . . ." (Resp't's Ex. 7 at 19, Dkt. No. 8-7.) The Minnesota Supreme Court was demonstrably on notice of Petitioner's federal claim because it expressly stated that "the United States Constitution guarantee[s] a criminal defendant the right to legal representation[,]" when it determined "that the State's discovery motion at [Petitioner's] first appearance . . . was not a critical stage." (Resp't's Ex. 11 at 3, 5.) The court came to its conclusion by distinguishing Petitioner's case from multiple U.S. Supreme Court cases—*U.S. v. Wade*,[6] *Gilbert v. California*,[7] and *Coleman v. Alabama*[8]— where the Court opined on the Sixth Amendment right to counsel in certain pre-trial procedures. (*Id*. at 4–5.) This satisfies the fair presentation requirement.

### C.   The Merits of Mr. Zaldivar-Proenza's Habeas Petition

Finding that these threshold matters present no bar to this Court's authority to determine whether Petitioner is currently lawfully detained by the state of Minnesota, the Court will next consider the merits of Mr. Zaldivar-Proenza's Petition. Petitioner claims that his initial appearance was a "critical stage" of his criminal prosecution and that the state courts violated his Sixth Amendment right to counsel by granting the State's discovery motion without Petitioner's counsel present during the initial appearance. (Pet. at 2–4.)

The Sixth Amendment provides the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

---

[6] 388 U.S. 218 (1967).
[7] 388 U.S. 263 (1967).
[8] 399 U.S. 1 (1970).

U.S. Const. amend. VI. "'[T]he Sixth Amendment right to counsel attaches at the first formal proceeding against an accused.'" *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 203 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 180–81 (1991)). "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "Critical stages" are defined as "pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975) (citing *Coleman*, 399 U.S. at 9 (1970); *Wade*, 388 U.S. at 226–27). The U.S. Supreme Court established the test in *Wade* and *Gilbert* to determine what constitutes a critical stage of a criminal prosecution. *See Wade*, 388 U.S. at 236–37; *Gilbert*, 388 U.S. at 267.[9]

In *Wade*, the Court held that a postindictment, pretrial lineup was a critical stage because there was a "grave potential for prejudice . . . in the pretrial lineup" and such prejudice can only be averted with the presence of defense counsel. 388 U.S. at 236. The *Wade* Court distinguished the lineup from other "preparatory" evidence gathering—such as obtaining the "accused's fingerprints, blood sample, clothing, hair, and the like"—and concluded that such events are not critical stages because the defendant can still cross-examine witnesses and call their own witnesses afterwards. *Id.* at 227–28.

Similarly, in *Gilbert*, the Court held that taking preindictment handwriting exemplars from the defendant was not a "critical stage" because, like *Wade*, defense

---

[9] The U.S. Supreme Court decided *Gilbert* and *Wade* together. *Wade*, 388 U.S. at 221; *Gilbert*, 388 U.S. at 264.

counsel had the opportunity to meaningfully confront the State's case by cross-examining the State's witnesses and calling their own defense witnesses afterwards. *Gilbert*, 388 U.S. at 267. Therefore, the Supreme Court's guiding principal under *Wade* and *Gilbert* is that a proceeding is not a critical stage if "there is minimal risk that the absence of counsel might derogate from his right to a fair trial." *Id.* (citing *Wade*, 388 U.S. at 218). Additionally, determining that a hearing is a "critical stage" depends on "whether potential substantial prejudice to defendant's rights" can be cured by counsel's ability to cross-examine witnesses and give effective counsel at trial afterwards. *Wade*, 338 U.S. at 227. The Court will now turn to the question of whether, here, the state court properly identified and applied the clearly established federal law found in *Wade* and *Gilbert*.

### 1. The Minnesota Supreme Court's decision was not "contrary to" clearly established federal law

The Eighth Circuit has found that a state court decision is "contrary to" clearly established federal law where it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Taylor*, 529 U.S. at 412).

Mr. Zaldivar-Proenza argues that the state courts denied him his Sixth Amendment right to counsel in violation of *Gideon v. Wainwright*,[10] *Rothgery v. Gillespie County, Texas*,[11] and *Montejo v. Louisiana*.[12] (*Id.* at 3, 5, 7–9.) He argues that, under *Gideon*, all defendants in criminal proceedings have the right to assistance of counsel; that under *Rothgery*, once a defendant has an initial appearance, his Sixth Amendment right to counsel is triggered; and that, under *Montejo*, a defendant needs the guiding hand of counsel from arraignment to trial. (*Id.*) Thus, when the state court denied him the assistance of counsel during his initial appearance and granted the State's motion to examine and photograph his body—and when the higher state courts affirmed his conviction despite this denial of his constitutional rights—the state courts' decisions were contrary to established federal law. (*Id.* at 3–9.)

Respondent argues that the Minnesota Supreme Court's decision was not "contrary to" clearly established federal law because the court correctly applied the same rule as the U.S. Supreme Court did in *Gilbert* and *Wade* to determine that Mr. Zaldivar-Proenza's initial appearance was not a critical stage. (*Id.* at 10.) Respondent further contends that there is no U.S. Supreme Court precedent dealing with materially indistinguishable facts because the Court has never applied the critical-stage analysis to a grant of a discovery motion during an initial appearance, including where—as here—there is transitory evidence. (*Id.* at 9.)

---

[10] 372 U.S. at 344.
[11] 554 U.S. at 213.
[12] 556 U.S. at 786.

The Court concludes that the Minnesota Supreme Court's decision was not "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1). The question that Mr. Zaldivar-Proenza raises is important: when does the right to counsel attach, and did Minnesota's courts get it wrong in his case? The Supreme Court has answered that "the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer *at or after the time that judicial proceedings have been initiated against him* 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398–99 (1977) (citations omitted, emphasis added). The Supreme Court has qualified that this does not mean that defendants have the right to assistance of counsel during all phases of litigation; instead, they have the right during "critical stages" of the proceedings. *Montejo*, 556 U.S. at 786. Because of this, the question at the heart of this Habeas Petition is whether the grant of a pretrial discovery motion at Petitioner's initial appearance was a critical stage.

The U.S. Supreme Court has not directly answered whether the grant of a pretrial discovery motion during an initial appearance is a critical stage, but it has spoken to the question more generally in the *Wade* and *Gilbert* opinions. *Wade* and *Gilbert* give courts comparisons to use to decide if future cases involve a "critical stage" issue. Under *Wade* and *Gilbert*, if the facts of a case are more like a pretrial lineup, then that is a critical stage and a defense attorney should have been there; if the facts are more like gathering pretrial evidence like a defendant's fingerprints, blood, clothing, hair, or handwriting, then that is not a critical stage, and it is acceptable not to have a defense attorney present. *Wade*, 388

U.S. at 227–28, 236–37; *Gilbert*, 388 U.S. at 267. *Wade* and *Gilbert* also give courts a general rule of thumb—if a defendant can take actions afterwards to cure the detrimental effects of their attorney's absence at certain pretrial proceedings, such as by filing a motion to suppress evidence or by countering the evidence at trial effectively—then that is not a critical stage because the defendant's right to a fair trial has not been jeopardized. *Gilbert*, 388 U.S. at 267 (citing *Wade*, 388 U.S. at 218).

Here, the Minnesota Supreme Court correctly applied the holdings in *Wade* and *Gilbert* to this analogous case about pretrial evidence by considering the type of evidence sought, which was less like a pretrial lineup and more like fingerprints, blood, or hair collection; the risk of prejudice caused by the absence of Petitioner's defense counsel at the initial appearance; and the ability for defense counsel to cure any prejudice afterwards. *Wade*, 388 U.S. at 227; *Gilbert*, 388 U.S. at 267. The court concluded that there was no "grave potential for prejudice" in granting the State's motion to obtain photographic postindictment, pretrial evidence because Petitioner's lawyer could still take steps to protect his rights afterwards by bringing a motion to suppress, and by cross-examining witnesses and calling his own expert witnesses later at trial. (Resp't's Ex. 11 at 4.) Furthermore, the court found that there was no risk of prejudice at the initial appearance because no evidence was presented, no witnesses testified, and the district court promptly informed Petitioner of his right against self-incrimination when Petitioner discussed an alternate cause for his scratches. (*Id.*)

Additionally, there is no U.S. Supreme Court case of "materially indistinguishable" facts that the Minnesota Supreme Court should have considered. (Resp't's Answer at 9.)

As previously noted, the U.S. Supreme Court has never held that that a grant of a pretrial discovery motion at an initial appearance is a critical stage, and the Minnesota Supreme Court noted that this case presented an issue of first impression. (Resp't's Ex. 11 at 1.) Moreover, the facts in Petitioner's case are distinguishable from the facts in *Wade* and *Gilbert*. This case involves a time-sensitive discovery motion to acquire *transitory* evidence, which the state district court found necessitated that Petitioner's counsel would have to challenge the motion after the court decided it through a motion to suppress and through examining witnesses at trial. In contrast, the evidence in *Wade* and *Gilbert* was *permanent* in nature—a physical lineup and handwriting exemplars—and did not involve a compelling need for a discovery motion to be immediately decided. Thus, the state courts reasonably applied *Wade* and *Gilbert* to facts in this case that are similar—but not identical—because there is no U.S. Supreme Court case that has been decided precisely on these facts.

Consequently, the Court finds that the state court's decision was not "contrary to" clearly established federal law because it did not reach a conclusion opposite to the U.S. Supreme Court on a question of law, or decide Mr. Zaldivar-Proenza's case differently than the Court did in a case with the same facts.

### 2. The Minnesota Supreme Court's decision was not an "unreasonable application" of clearly established federal law

The next question is whether the state courts identified the right federal law, but their decision "involved an unreasonable application of" it. *See* 28 U.S.C. § 2254(d)(1). A state court's decision is "an unreasonable application" of clearly established federal law if

16

the state court correctly identifies the Supreme Court's governing legal principle, but then "unreasonably applies that principle to the facts of the prisoner's case." *Thaler*, 559 U.S. at 47 (citing *Taylor*, 529 U.S. at 413). In reviewing a habeas petition, federal courts may not find that a state court reached the wrong conclusion simply because, in the federal court's independent judgment, it "would have applied federal law differently from the state court." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (citation omitted). Petitioner is entitled to relief "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodhall*, 572 U.S. 415, 427 (2014) (quoting *Harrington*, 562 U.S. at 103).

In his Petition, Mr. Zaldivar-Proenza argues that the state district court misapplied *Gideon* when it "denied Petitioner access to a Public Defender prior to the Rule 5 hearing being held, or during the Rule 5 hearing[,]" and that the Minnesota Supreme Court also misapplied *Gideon* and *Rothgery* when it held that "[t]o be clear, we do not hold that a Rule 9.02 discovery motion can never be a critical stage of a proceeding 'only in this instance it was not.'" (Pet'r's Mem. Supp. at 3, 8–9.) Likewise, Petitioner claims that the Minnesota Supreme Court misapplied *Rothgery* when it affirmed the state district court's decision to hold the initial appearance and grant the State's motion "without the Defendant [] having a lawyer in the Hearing to represent him." (*Id.* at 5.)

Respondent argues that the Minnesota Supreme Court's decision was not an unreasonable application of federal law because this case is similar to *Gilbert* and *Wade* where Petitioner's counsel had the opportunity to cure any prejudice later on through bringing a motion to suppress, and through witness examination at trial. (Resp't's Answer

at 11.) Respondent further contends that, under the two distinct fact patterns of the *Gilbert* and *Wade* holdings, the Minnesota Supreme Court did not unreasonably apply federal law where the U.S. Supreme Court has never encyclopedically resolved which facts would fall under either *Gilbert* or *Wade* in the future. (*Id.* at 13 (citing *Wright v. Van Patten* 522 U.S. 120, 125–26 (2008) (per curiam) (holding that the state court reasonably applied clearly established law by applying *Strickland v. Washington*[13] rather than *U.S. v. Cronic*[14] to evaluate an ineffective assistance of counsel claim because the Court's precedent did not specify whether *Cronic* or *Strickland* applied "in this [case's] novel factual context")).)

Here, the Court finds that the Minnesota Supreme Court's decision did not "involve[] an unreasonable application of" of "clearly established Federal law." 28 U.S.C. § 2254(d). The court reasonably applied both *Wade* and *Gilbert* to the instant facts. In *Wade*, the U.S. Supreme Court held that a pretrial lineup is a critical stage, whereas obtaining fingerprints, blood samples, clothing, hair, or similar preparatory evidence before trial, is not a critical stage. 388 U.S. at 227–28, 236–37. In *Gilbert*, the Court held that taking pretrial handwriting exemplars is not a critical stage. 388 U.S. at 267. Here, the Minnesota Supreme Court held that permitting a pretrial examination of Petitioner's body, including photographs of scratches on his arm, was not a critical stage. Not only are these fact patterns reasonably analogous to the identified non-critical stages in *Wade* and *Gilbert*; the legal analysis applied to those facts is identical: as in *Wade* and *Gilbert*, the court evaluated the risk of prejudice caused by the absence of Petitioner's counsel at the initial

---

[13] 466 U.S. 668 (1984).
[14] 466 U.S. 648 (1984).

appearance, finding that "[t]here was no 'grave potential for prejudice.'" (Pet'r's Ex. 11 at 4.) This Court finds that conclusion objectively reasonable. The U.S. Supreme Court in *Wade* and *Gilbert* stressed the importance of defense counsel being able to cross-examine witnesses and call their own witnesses for meaningful confrontation of the United States's case. (*Wade*, 388 U.S. at 227–28; *Gilbert*, 388 U.S. at 267.) Petitioner's counsel was able to do so here. (Pet'r's Ex. 11 at 4.)

Mr. Zaldivar-Proenza also points to *Gideon* and *Rothgery* as a basis for his Habeas Petition and claims that the state courts misapplied those U.S. Supreme Court precedents. The Court disagrees for the reasons that follow. In *Gideon*, the defendant had been charged in state court in Florida, and Florida did not provide him an attorney at his trial because Florida law did not require an attorney be present unless the state had charged a defendant with a capital offense (and the defendant had not been so charged). *Gideon*, 372 U.S. at 337. In deciding the case on appeal, the U.S. Supreme Court extended the Sixth Amendment's protections through the Fourteenth Amendment, overturning Florida's conviction of the defendant because it found that the Sixth Amendment's right to assistance of counsel applies not just in federal criminal cases, but in "in all criminal prosecutions"— including in state criminal cases. *Id.* at 339, 345. Here, Minnesota provided Mr. Zaldivar-Proenza with counsel, and therefore, this Court cannot find that the state courts misapplied *Gideon*.

Likewise, the Court cannot find that the state courts misapplied *Rothgery*. Justice Souter's opinion in *Rothgery* begins, "This Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer

at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." 554 U.S. at 194 (citing *Brewer*, 430 U.S. at 398–99; *Michigan v. Jackson*, 475 U.S. 625, 629 n.3 (1986)). Mr. Zaldivar-Proenza logically asks why, if counsel was not present with him at his first appearance before a judicial officer—at his initial appearance—the state courts did not misapply *Rothgery* when they upheld his conviction. The answer—provided by the U.S. Supreme Court's *Rothgery* decision—is twofold: because the state court appointed counsel for Petitioner within a reasonable time after his judicial proceedings began, and because he was not without counsel at any critical pretrial stage. *Id.* at 212.

In *Rothgery*, Texas police officers arrested the defendant because they thought that he was a felon in possession of a weapon. *Id.* at 195. Since the officers did not have a warrant, they brought the defendant before a magistrate judge—without a defense attorney or a prosecutor[15] present—to make a probable cause determination. *Id.* at 195–96. In this "article 15.17 hearing" governing certain initial appearances after an arrest under Texas law, the magistrate judge made a probable cause determination, formally stated the charges against the defendant, set his bail and conditions of release, and committed him to jail. *Id.* at 196. The defendant repeatedly requested an attorney, but none was appointed for him, and he subsequently posted a bond to be temporarily released from jail. *Id.* Approximately

---

[15] The *Rothgery* case was not primarily focused on answering when defense counsel should be present, but rather on when a prosecutor should be present. The U.S. Supreme Court framed the case as answering the question of "whether attachment of the [Sixth Amendment] right [to counsel] also requires that a public prosecutor (as distinct from a police officer) be aware of [a defendant's] initial proceeding or [be] involved in its conduct[,]" to which the Court responded, "it does not." *Id.* at 194–95.

six months later, he was indicted for the crime of his earlier arrest, and after three weeks in jail, the state assigned him a lawyer who immediately moved to dismiss the indictment because the defendant was not, in fact, a felon, and so could lawfully be in possession of a weapon (and won—the court dismissed the indictment). *Id.* The defendant then filed a Title 42 U.S.C. § 1983 action against the county that had arrested him (Gillespie County), "claiming that if the County had provided [the defendant with] a lawyer within a reasonable time after the article 15.17 hearing, he would not have been indicted, rearrested, or jailed for three weeks[,]" and that the County's "unwritten policy of denying appointed counsel to indigent defendants out on bond until at least the entry of an information or indictment" violated his Sixth Amendment rights. *Id.* When the case reached the U.S. Supreme Court on appeal, it held that the defendant was right and that Texas's article 15.17 hearing marked the point at which the state had an obligation to appoint counsel "*within a reasonable time after attachment to allow for adequate representation at any critical stage before trial*, as well as at trial itself." *Id.* at 212 (emphases added). The Court also observed that "what makes a stage critical is what shows the need for counsel's presence." *Id.*

Here, the state district court stated the following to Mr. Zaldivar-Proenza at his initial appearance: "You have applied for a lawyer, and you qualify. So an attorney will appear with you at your next appearance." (Pet'r's Ex. B at 3:18–20.) Because such an appointment occurred within a reasonable time after Petitioner became entitled to—and requested—an attorney, and because the state courts were objectively reasonable when they applied the U.S. Supreme Court's holdings in *Wade* and *Gilbert* to conclude that the

pretrial discovery motion was not a "critical stage," this Court cannot find that the Minnesota Supreme Court's decision misapplied the holding in *Rothgery*.

Consequently, this Court concludes that the Minnesota Supreme Court's decision to affirm Petitioner's conviction because Petitioner's defense counsel was not absent from a "critical stage" of Mr. Zaldivar-Proenza's case, and that, therefore, his Sixth Amendment rights were not violated, was an objectively reasonable application of federal law.

### 3.    The Minnesota Supreme Court's decision was not without a basis in the evidentiary record

Alternatively, a federal court may grant habeas relief even where a federal court finds that the state trial court reasonably identified and applied federal law if a prisoner's conviction is based on findings that are not reasonably contained in the state court's evidentiary record. *See* 28 U.S.C. § 2254(d)(2). However, the reviewing federal court presumes that the state court's factual determinations are correct, and this presumption may be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Additionally, a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted).

Neither Petitioner nor Respondent argue that the Minnesota Supreme Court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254 Regardless, in the interest of thoroughness, this Court finds that the record supports the Minnesota Supreme Court's factual findings.

The facts before the Minnesota Supreme Court are undisputed: at Petitioner's initial appearance, the State moved to capture transitory evidence, and the state district court granted that motion when Petitioner's counsel was not present. (Pet'r's Ex. B at 7–8.) Based on these facts, the Minnesota Supreme Court found that Petitioner's initial appearance was not a critical stage because "[t]here was 'no grave potential for prejudice'" from the absence of Petitioner's counsel. (Pet'r's Ex. 11 at 3.) The court further held that Petitioner's counsel cured any potential prejudice by challenging the photographic evidence at a motion to suppress hearing and by objecting to the evidence at trial. (*Id.* at 4.) Additionally, the court observed that what would have transformed the initial appearance into a critical stage—such as the opportunity to present evidence or examine witnesses—did not occur. (*Id.*)

Nothing in the record suggests that the Minnesota Supreme Court made unreasonable or erroneous factual determinations. Petitioner made only one factual argument by claiming at his initial appearance that the scratches on his body resulted from working on a fence the prior weekend. (Pet'r's Ex. B at 6.) The Minnesota Supreme Court reasonably found that the district court prevented any prejudice from occurring concerning this contested fact by promptly stopping Petitioner from speaking further about this fact at his initial appearance in order to preserve his right against self-incrimination, and by entertaining a motion to suppress before trial and objections to the evidence at trial. (Pet'r's Ex. 11 at 4.) Consequently, this Court finds that the Minnesota Supreme Court's decision was based on findings that are reasonably contained in the state court's record.

In sum, the Minnesota Supreme Court's decision was not "contrary to" or an "unreasonable application" of clearly established federal law, nor was it based on findings that are not reasonably contained in the state court's record. 28 U.S.C. § 2254(d). Therefore, the Court recommends that Mr. Zaldivar-Proenza's Habeas Petition be denied and dismissed with prejudice. *See Reed v. Symmes*, No. 08-CV-4988 (PJS/RLE), 2009 WL 6478780, at *19 (D. Minn. Sept. 17, 2009), *R & R adopted*, 2010 WL 1995607 (D. Minn. May 18, 2010) (dismissing a petitioner's 28 U.S.C. § 2254 petition with prejudice because the Minnesota Supreme Court's decision was not "contrary to Federal law in rejecting [the petitioner's] Sixth Amendment right claim . . .").

## D. Certificate of Appealability

If a § 2254 habeas corpus petitioner receives an adverse ruling from the federal district court, they may only appeal that ruling if they are granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ."); *see also* Fed. R. App. P. 22(b)(1) ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). Courts cannot grant a petitioner a COA unless that petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has made a substantial showing that the state courts denied his Sixth Amendment right to counsel. The Minnesota Supreme Court's decision was objectively reasonable; however, two justices dissented, which demonstrates that "reasonable jurists" found that the lower courts' assessment of Petitioner's claim was "debatable or wrong." (*See* Pet'r's Ex. D at 13.) While this Court finds that the Minnesota Supreme Court's application of *Wade* and *Gilbert* was objectively reasonable, the U.S. Supreme Court has never decided whether granting a discovery motion at an initial appearance, for the purpose of obtaining transitory evidence, is a "critical stage" of a criminal prosecution for Sixth Amendment purposes. Therefore, the Court recommends that Petitioner be granted a COA in this matter.

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Petitioner Raciel Zaldivar-Proenza's Petition for a Writ of Habeas Corpus (Dkt. No. 1) be **DENIED**;

2) This action be **DISMISSED WITH PREJUDICE**; and

3) That a COA be issued.

Dated: April 25, 2022

    *s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).