UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Raciel Zaldivar-Proenza, | Case No. 0:21-cv-1231 (KMM/JFD) |
| Petitioner, | |
| v. | **ORDER** |
| William Bolin, *Warden*, | |
| Respondent. | |

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge John Docherty dated April 26, 2022. [Doc. 15]. The R&R recommends that Petitioner Raciel Zaldivar-Proenza's habeas petition be denied, but that a certificate of appealability ("COA") be issued. [*Id.*] Respondent William Bolin objected to the portion of the R&R recommending that a COA issue, [Doc. 16], and Mr. Zaldivar-Proenza responded to that objection, [Doc. 17]. Based on a thorough review of the record, the Court accepts the R&R, overrules Respondent's objection, denies the petition, and issues a COA.

**I.    Background**

Mr. Zaldivar-Proenza was convicted of criminal sexual conduct in Minnesota state district court and sentenced to a 78-month prison term, followed by lifetime conditional release. At the start of his criminal case, he had an initial appearance to determine his eligibility for appointment of counsel and to set bail for pretrial release. Mr. Zaldivar-Proenza is a Spanish speaker, and an interpreter was present at the initial appearance to assist him in understanding the proceedings. [Doc. 15 at 3 n.2]. The district court found

that Mr. Zaldivar-Proenza qualified for a public defender and indicated that one would appear with him at the next hearing. Although Mr. Zaldivar-Proenza had no attorney present to represent his interests during the initial appearance, the prosecutor brought a discovery motion seeking permission from the court to photograph Mr. Zaldivar-Proenza's body "because there were scratches on it that the assault victim could have inflicted." [Doc. 15 at 1–2; Doc. 1-1 at 2, 7]. The district court expressed a concern about preserving Mr. Zaldivar-Proenza's right to counsel to address the motion, but asked whether there was any urgency to the prosecutor's request to obtain the evidence. [Doc. 15 at 3; Doc. 1-1 at 7]. Ultimately, the trial court granted the State's request, and photographs of the scratch marks were taken. [Doc. 15 at 3; Doc. 1-1 at 8].

During the initial appearance, Mr. Zaldivar-Proenza made statements in the presence of the prosecutor and the trial court about how he got the scratch marks from a fence in the area where he was working the prior weekend. [Doc. 15 at 3–4; Doc. 1-1 at 8–10]. The trial court cautioned Mr. Zaldivar-Proenza not to make any further statements "to preserve his right against self-incrimination, and advised him that his attorney would be present at his next hearing." [Doc. 15 at 3–4; Doc. 1-1 at 8–9]. Later, when represented by counsel, Mr. Zaldivar-Proenza sought to suppress the photographic evidence, but the trial court denied his motion. [Doc. 15 at 4]. He was eventually convicted by a jury and sentenced by the district court. [*Id.*].

Mr. Zaldivar-Proenza appealed his conviction to both the Minnesota Court of Appeals and the Minnesota Supreme Court, arguing that the initial appearance was a "critical stage" at which he was entitled to have counsel present under the Sixth

Amendment. Both courts found that the proceeding was not a critical stage and affirmed his conviction. *State v. Zaldivar-Proenza*, No. A19-0157, 2020 WL 290442 (Minn. Ct. App. Jan. 21, 2020); *State v. Zaldivar-Proenza*, 957 N.W.2d 93, 100 (Minn. 2021) ("*Zaldivar-Proenza II*"). Notably, in the Minnesota Supreme Court, Justice Hudson, joined by Chief Justice Gildea dissented, concluding that the hearing on the discovery motion was a critical stage, Mr. Zaldivar-Proenza was entitled to counsel, and the district court's decision granting the motion in the absence of counsel violated his Sixth Amendment right to counsel.

> When the State invoked Minn. R. Crim. P. 9.02, subd. 2, to obtain evidence from Zaldivar-Proenza's body, it engaged in a trial-like confrontation and presented a legal problem, one that Zaldivar-Proenza, a non-English-speaking layperson, was ill-equipped to understand without the aid of counsel. Because these circumstances amount to a critical stage, the absence of counsel violated Zaldivar-Proenza's Sixth Amendment right and I would therefore reverse the court of appeals and remand for a new trial.

*Zaldivar-Proenza II*, 957 N.W.2d at 101 (Hudson, J., dissenting).

On May 5, 2021, Mr. Zaldivar-Proenza filed this habeas proceeding challenging his state conviction and sentence. [Doc. 1]. As noted above, Judge Docherty recommended that the petition be denied, that this action be dismissed, and that a COA be issued.

## II.   Standard of Review

The Court reviews *de novo* any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). In the absence of objections, the Court reviews the R&R for clear error. *Nur v. Olmsted Cnty.*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.

3

1996) (per curiam)). Here, Respondent objects only to the portion of the R&R pertaining to the issuance of a COA. Accordingly, the Court reviews that portion of the R&R *de novo*, and the remainder for clear error.

## II. Analysis

### A. Merits

To obtain a writ of habeas corpus in this case, Mr. Zalvidar-Proenza was required to show that the state court's adjudication of the merits of his Sixth Amendment claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This is a very deferential standard. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). It requires a showing that "the state court's ruling on the claim being presented in a federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (citing *Harrington*, 562 U.S. at 103).

In short, it is not enough for Mr. Zaldivar-Proenza to show that the state court got it wrong when it ruled on his Sixth Amendment claim; rather, he must show that the state court's decision contradicts existing Supreme Court precedent, or that it identified the correct legal rule, but applied it unreasonably. *See Boss v. Ludwick*, 760 F.3d 805, 809–10 (8th Cir. 2014) (distinguishing between decisions that are "contrary to" clearly established law, on the one hand, and on the other, those that involve an "unreasonable application of" clearly established law). "A state court decision is 'contrary to' clearly established federal

law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020). A state court decision involves an unreasonable application of clearly established federal law "when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Id.* (quotation omitted).

The R&R properly determined that the Minnesota Supreme Court's decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.[1]

### *"Contrary To"*

First, the R&R noted that "[t]he U.S. Supreme Court has not directly answered whether the grant of a pretrial discovery motion during an initial appearance is a critical stage, but it has spoken to the question more generally in [*United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263 (1967)]." [Doc. 15 at 14]. While the *Wade* Court held that a postindictment, pretrial lineup was a critical stage, 388 U.S. at 236–37, *Gilbert* holds that the taking of handwriting exemplars prior to an indictment is not, 388 U.S. at 267. In *Wade* the Court distinguished the lineup proceeding from other

---

[1] The Court also agrees with the R&R's conclusion that the Minnesota Supreme Court's decision in this case had an adequate basis in the evidentiary record, and Mr. Zaldivar-Proenza is not entitled to a writ of habeas corpus under 28 U.S.C. § 2254(d)(2). [Doc. 15 at 22–24].

evidence-gathering proceedings such as obtaining "the accused's fingerprints, blood sample, clothing, hair, and the like." 388 U.S. at 227–28. These types of proceedings were not critical stages because the defendant could still cross-examine witnesses and call his own witnesses afterwards. *Id.* By contrast, the lineup proceeding was a critical stage because it presented a significant potential for prejudice that could not be averted without defense counsel's presence. *Id.* at 236–37. The *Gilbert* Court similarly reasoned that obtaining handwriting exemplars was not a critical stage because defense counsel could later respond to the prosecution's case through cross-examination and presentation of the defense's own witnesses. 388 U.S. at 267. As the R&R observes:

> *Wade* and *Gilbert* also give courts a general rule of thumb—if a defendant can take actions afterwards to cure the detrimental effects of their attorney's absence at certain pretrial proceedings, such as by filing a motion to suppress evidence or by countering the evidence at trial effectively—then that is not a critical stage because the defendant's right to a fair trial has not been jeopardized.

[Doc. 15 at 15 (citing *Gilbert*, 388 U.S. at 267 (citing *Wade*, 388 U.S. at 218))].

The Minnesota Supreme Court applied both *Wade* and *Gilbert* in addressing Mr. Zaldivar-Proenza's Sixth Amendment claim and determining whether his initial appearance was a critical stage. [Doc. 15 at 14–15]. The Minnesota Supreme Court found there was not a "grave potential for prejudice" because counsel for Mr. Zaldivar-Proenza could still represent him effectively at trial even though the photographs were taken outside counsel's presence. The court found that, as was the case with the handwriting exemplars in *Gilbert*, any issues with the photographs could be addressed through cross examination of witnesses at trial. And, the state court reasoned that Mr. Zaldivar-Proenza could have

6

hired an expert to present testimony concerning the scratches. *Zaldivar-Proenza II*, 957 N.W.2d at 98–99. Finally, the state court distinguished Mr. Zaldivar-Proenza's case from *Coleman v. Alabama*, 399 U.S. 1 (1970). *Id.* at 99. Although the *Coleman* Court found that the preliminary hearing at issue was a critical stage, that proceeding allowed for the cross-examination of witnesses and consideration of complicated legal issues that would be difficult to challenge later. *Id.* The Minnesota Supreme Court reasoned that Mr. Zaldivar-Proenza's initial appearance was different because "no witnesses testified at his first appearance, and, accordingly, there was no cross-examination of witnesses." *Id.* Moreover, the court explained that when he "told the district court about an alternate cause for the scratches, . . . the district court, properly and promptly, stopped him from speaking further in order to preserve his right against self-incrimination." *Id.*

The R&R found that the Minnesota Supreme Court's decision was not contrary to the rule of law established in *Gilbert* and *Wade*. Judge Docherty further concluded that the court did not disregard a Supreme Court decision with materially indistinguishable facts because *Coleman* was, in fact, distinguishable. [Doc. 15 at 14–16]. This Court finds no error, clear or otherwise, with those conclusions.

### *"Unreasonable Application"*

Second, the R&R evaluated whether the Minnesota Supreme Court unreasonably applied clearly established federal law as determined by the U.S. Supreme Court. [Doc. 15 at 16–22]. The R&R properly explained that when deciding a habeas petition, a federal court is not permitted to issue the writ merely because, "in the federal court's independent judgment, it would have applied federal law differently from the state court"; instead, the

writ may issue only where "it is so obvious that a clearly established rule applies to a give set of facts that there could be no fairminded disagreement on the question." [*Id.* at 17 (citing *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006), and *White v. Woodhall*, 572 U.S. 415, 427 (2014)) (quotations omitted)]. Applying this standard, the R&R found that the Minnesota Supreme Court reasonably applied *Wade* and *Gilbert* to the facts of Mr. Zaldivar-Proenza's case. The Minnesota Supreme Court explained its reasoning as follows:

> We agree that Zaldivar-Proenza's situation is analogous to *Gilbert* and distinguishable from *Wade*. There was no "grave potential for prejudice" in the taking of the photographs that would prevent Zaldivar-Proenza's lawyer from effectively representing him at trial. Zaldivar-Proenza points to nothing in the process of taking photographs that raises the same kind of inherent dangers that the Supreme Court found concerning in *Wade*. Indeed, Zaldivar-Proenza does not assert that the presence of counsel was required during the taking of the photographs, but only at the hearing requesting that the photographs be taken.[] Rather, like in *Gilbert*, if there was any question regarding the authenticity of the photographs, how the photographs were taken, or whether the photographs were accurate depictions of the scratches, the relevant challenges could have been made during cross-examination or in a motion to suppress. In addition, Zaldivar-Proenza could have hired an expert witness to testify regarding the nature of the scratches and photographs.

*Zaldivar-Proenza II*, 957 N.W.2d at 98–99.[2]

---

[2] In a footnote within this passage, the court reasoned that the "transitory nature of the scratches on Zaldivar-Proenza's arm in this case . . . dictated that the photographs could not be taken later and [that] the photographs themselves preserve more permanently the images of the scratches." *Zaldivar-Proenza II*, 957 N.W.2d at 98 n.3. The court found that Mr. Zaldivar-Proenza's argument regarding the "ephemeral" nature of the scratches essentially blurred the lines between his critical-stage argument and "a different argument for earlier appointment of counsel," that had not been raised. *Id.*

8

The R&R determined that the Minnesota court's analysis of the Supreme Court's precedent did not involve an unreasonable application of *Wade* or *Gilbert*. The R&R explained that the facts in this case are reasonably analogous to the fact patterns identified as non-critical stages in *Wade* and *Gilbert* and that the Minnesota Supreme Court's legal analysis was identical to that undertaken in each case, with an evaluation of "the risk of prejudice caused by the absence of Petitioner's counsel at the initial appearance" and a "finding that there was no grave potential for prejudice." [Doc. 15 at 18–19 (cleaned up)]. Judge Docherty also explained that both *Wade* and *Gilbert* "stressed the importance of defense counsel being able to cross-examine witnesses and call their own witnesses for meaningful confrontation of the United States's case," which Mr. Zaldivar-Proenza's attorney "was able to do . . . here." [*Id.*].

Magistrate Judge Docherty also rejected Mr. Zaldivar-Proenza's argument that the state court's decision involved an unreasonable application of *Gideon v. Wainwright*, 372 U.S. 335 (1963), because unlike the defendant in *Gideon*, Mr. Zaldivar-Proenza was, in fact, provided court-appointed counsel to defend him during the criminal proceedings. [Doc. 15 at 19]. Further, Judge Docherty rejected Mr. Zaldivar-Proenza's argument that the state court's determination involved an unreasonable application of *Rothgery v. Gillespie County*, 554 U.S. 191 (2008), because counsel was appointed for him "within a reasonable time after his judicial proceedings began, and because he was not without counsel at any critical pretrial stage." [Doc. 15 at 19–21].

This Court finds no error in the R&R's evaluation of Mr. Zaldivar-Proenza's habeas claim. The R&R did not clearly err in concluding that the deferential "unreasonable

9

application" standard in this case affords Mr. Zaldivar-Proenza no relief. Because fairminded jurists could disagree as to whether the rule in *Wade* and *Gilbert* would require a determination that the initial appearance in this case was a critical stage, the Minnesota Supreme Court's conclusion that it was not a critical stage was not objectively unreasonable. Similarly, the Court finds no error in the R&R's evaluation of Mr. Zaldivar-Proenza's arguments under *Gideon* or *Rothgery*. Accordingly, the Court adopts the R&R's conclusions and recommendation that the habeas petition be denied.

### B. Certificate of Appealability

Although Magistrate Judge Docherty recommended denying the writ in this case, he also recommended issuing a COA. Mr. Bolin contends that Judge Docherty applied the incorrect legal standard when reaching that conclusion. [Doc. 15 at 24–25]. Under 28 U.S.C. § 2253(c)(1), a denial of a petition for habeas corpus brought under § 2254 may not be appealed unless the district court issues a COA. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). How a petitioner makes such a showing is at issue here.

Magistrate Judge Docherty stated that "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." [Doc. 15 at 24–25 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (200))]. Mr. Bolin argues that the R&R applied the wrong legal standard because, under *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), the proper inquiry is not whether reasonable jurists would find debatable the existence of an underlying constitutional

violation, but rather whether reasonable jurists could disagree that the habeas petition should have been resolved differently. [Doc. 16 at 2].

Habeas petitioners proceeding under § 2254 are not entitled to appeal the denial of their petitions unless the district court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). The COA may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

The Court finds no error in the R&R's conclusion that a COA should issue. It is true that in *Miller-El*, the Supreme Court stated that to receive a COA, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 537 U.S. at 338. However, that is not all the *Miller-El* Court said about the issuance of a COA. The Court also observed that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* Moreover, "[w]e do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." *Id.* And "the question [in determining whether a COA should issue] is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342; *see Smith v. Dretke*, 422 F.3d 269, 273 (5th Cir. 2005) ("At the COA stage, we do not apply the deferential AEDPA

11

standard of review to examine the merits of the habeas petition." (citing *Miller-El*, 537 U.S. at 342)).

Judge Docherty, though finding that the Minnesota Supreme Court's application of *Wade* and *Gilbert* was objectively reasonable, properly noted that the Supreme Court has not addressed the specific Sixth Amendment issue in this case. And two Justices of the Minnesota Supreme Court dissented from the majority's denial of relief on this issue. Under these circumstances, this Court has little difficulty concluding that a COA should issue in this case. Accordingly, although the Court finds that denial of Mr. Zaldivar-Proenza's habeas petition is proper, he has shown that the issue presented in his habeas petition deserves further proceedings. A certificate of appealability will therefore be granted as to Petitioner's claim that his initial appearance, at which the State sought a ruling on its discovery motion, qualified as a critical stage, thereby triggering his Sixth Amendment right to counsel.

**I.   Order**

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. The Report and Recommendation [Doc. 15] is **ACCEPTED**;

2. The Respondent's Objection [Doc. 16] is **OVERRULED**;

3. The Petition for a Writ of Habeas Corpus [Doc. 1] is **DENIED**;

4. This action is **DISMISSED WITH PREJUDICE**; and

5. A certificate of appealability is issued pursuant to 28 U.S.C. § 2253(c) regarding Petitioner's claim that his Sixth Amendment right to counsel was violated when the trial court granted the State's discovery motion at his initial appearance in the absence of counsel.

**Let Judgment be entered accordingly.**

Date: November 9, 2022             *s/ Katherine Menendez*
                                   Katherine Menendez
                                   United States District Judge